Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| A.D.C.V. por conducto de sus padres con patria potestad SANDRA VELÁZQUEZ VILLARINI y ALBERTO CARRASQUILLO JIMÉNEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | TA2025RA00351 | *REVISIÓN JUDICIAL* Procedente del Departamento de Educación, Foro Administrativo de Educación Especial<br><br>Querella Núm.: QEE-2526-12-08-00387<br><br>Sobre: Compra de Servicios Terapia Disfagia, Terapia Ocupacional, Asistente de Servicios/Enfermera |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 21 de abril 2026.

Comparecen ante nos la señora Sandra Velázquez Villarini y el señor Alberto Carrasquillo Jiménez, padres con patria potestad del menor A.D.C.V. ("Parte Recurrente" o "padres del menor" conjuntamente), mediante un recurso de *Revisión Judicial* presentado el 14 de noviembre de 2025. Nos solicitan la revocación de la *Resolución* emitida y notificada el 17 de octubre de 2025, por el Foro Administrativo de Educación Especial del Departamento de Educación de Puerto Rico. ("Foro Administrativo" o "agencia"). Por virtud de este dictamen, la agencia declaró *No Ha Lugar* la *Querella* radicada por la Parte Recurrente en torno a la compra de servicios, pues concluyó que no cumplió con el *quantum* de prueba para prevalecer en su reclamación.

Por los fundamentos que expondremos a continuación, **revocamos** la *Resolución* impugnada.

## I.

El 19 de agosto de 2025, la señora Sandra Velázquez Villarini, madre del menor A.D.C.V, radicó una *Querella* contra el Departamento de Educación ante el Foro Administrativo de Educación Especial.[1] En síntesis, alegó que el 6 de mayo de 2025 se reunió con el Comité de Programación y Evaluación ("COMPU") para discutir unas recomendaciones y evaluaciones concernientes al menor. Específicó que, en la reunión se determinó que el estudiante necesita una asistente en atención a su diagnóstico de autismo. Sin embargo, la Parte Recurrente indicó que la escuela pública recomendada solo cuenta con una asistente para una sala de clases integrada por nueve (9) niños. Por tanto, adujo que matriculó al menor en una escuela privada, en donde este recibe las terapias en atención a sus necesidades. En vista de ello, peticionó la aprobación de la compra del servicio.

Por su parte, el 29 de agosto de 2025, el Departamento de Educación presentó su *Contestación a la Querella*.[2] En esencia, arguyó que el menor se encuentra ubicado en el programa de educación temprana de la Escuela Rosa C. Benítez de Bayamón. Puntualizó que, allí el estudiante recibirá los servicios suplementarios, según estipulados el Plan Educativo Individualizado ("PEI"). Por último, argumentó que en nuestro estado de derecho existe una presunción de corrección respecto a los ofrecimientos de ubicación.

Así las cosas, el 18 de septiembre de 2025, la agencia celebró una vista administrativa. Durante dicho proceso, compareció la señora Velázquez Villarini como testigo. Evaluada la prueba presentada ante la agencia, el 17 de octubre de 2025, el Foro

---

[1] *Véase*, SUMAC TA, Entrada Núm. 1, Anejo 1, págs. 1-3.
[2] *Véase,* SUMAC TA, Entrada Núm. 1, Anejo 3, págs. 36-41.

Administrativo de Educación Especial dictó y notificó *Resolución,* en la cual formuló las siguientes determinaciones de hechos:

Testimonio de la madre:

1. Declaró que no ha ingerido medicamentos ni sustancia alguna que le impida declarar.

2. Declara sobre su hijo querellante, quien pertenece a educación especial y tiene un diagnóstico de autismo.

3. Declara que el Departamento no le está supliendo todo lo que el niño necesita, sus necesidades de terapia y su T1. Expresa que los referidos servicios están establecidos en su PEI 2025-26.

4. Declara que el 6 de mayo de 2025 se llevó a cabo una reunión de COMPU para que se discutieron todos los servicios que su hijo necesita.

5. Declar[ó] que el propósito del COMPU fue incluir los servicios, de T1, ya que su hijo no tiene control de esfínter, necesita ayuda para poder comer.

6. Declaró que anteriormente había otro PEI el cual fue enmendado.

7. En ese COMPU se enmendó para que le reconocieran el T1, y para que el Departamento, le concediera las terapias que no se las están proveyendo.

8. Antes de la enmienda se suponía que debía recibir terapia de habla ocupacional, terapia neuromotora y de disfagia.

9. Declara que en estos momentos no está recibiendo las terapias porque no tienen los terapeutas. Lo que es exactamente disfagia, ocupacional neuromotora, no tienen los especialistas disponibles.

10. Ahora mismo los está recibiendo, pero privadas.

11. En cuanto al asistente de servicio se enmendó el PEI para que fuera un asistente para el estudiante solamente, ya que no tiene visión de peligro, no come solo, no tiene control de esfínteres, hay que asistirlo a la higiene.

12. Declara que visitó escuelas. Una de las escuelas la maestra le informó que solamente tiene un asistente.

13. Declara que el 13 de agosto, se supone que empezaban las clases, pero que cuando llegó con su hijo, la maestra le dijo que no lo podía recibir hasta el 18 de agosto.

14. Declaró que le preguntó si habían nombrado el asistente y contestó que al momento no, y que tiene 9 niños en el salón que necesitan nueve asistentes, y solamente tienen una.

15. El 18 de agosto le informaron que no hay una T1 para su hijo y que no lo han nombrado y que solamente tiene una asistente para nueve niños.

16. Declaró que durante este tiempo ha buscado un colegio en el cual le están dando todo, tiene su T1, tiene sus terapias, tiene absolutamente todo disponible en ese colegio.

17. Describió que la educación que le ofrecen a su hijo en ese Colegio es excelente, que observa un cambio. Declara que antes no hablaba y ahora dice "mamá", para ella eso es espectacular.

18. Declara que le solicita la Foro la compra de servicio que continue recibiendo todo lo que necesita, y que está establecido en su PEI. La representante legal no formuló más preguntas en su directo.

B. En Contrainterrogatorio

1. Admite que su hijo no habla, ya que es "no verbal", por eso, cuando llega a la nueva escuela solamente emitía sonidos. El menor se comunica mediante gestos, o busca a la persona para que le ayude.

2. Admite que ella visitó una escuela y su esposo otra.

3. Admite que ella visitó una escuela y su esposo otra. Admite que la indicada es la que ella visitó, y que fue recomendada por su facilitadora.

4. Admite que aceptó esa ubicación.

5. Admite que la aceptó porque era la escuela que según ellos tienen el kínder autismo, que es la que estaba preparada para recibir a su hijo.

6. Admite que es una ubicación adecuada, pero no la aceptó por la falta de asistente.

7. Admite que el menor necesita un asistente de servicios para servicios de higiene y alimentación.

8. Admite que como su hijo no reconoce el peligro ella le ha establecido una rutina en su casa en la que todo está estructurado, con portones con candado.

9. Admite que en la escuela es distinto porque en la escuela, el menor necesita el asistente porque este no mide peligro.

10. Admite que en el PEI se establece educación temprana en salón especial.

11. Declara que movió al menor, exactamente el mismo día el 18 de agosto.

12. Admite que le buscó el colegio porque no iba a dejar a su hijo sin una educación, ya que no tenían asistente, y no le recibieron al menor.

13. Admite que además de matricular a su hijo en ese colegio no lo notificó al Departamento.

14. Admite que luego prestó la querella. Declara que la facilitadora lo sabía, que se lo notifico por mensaje de texto.

15. Admite que no realizó una notificación oficial a la facilitadora.

16. Admite que luego procedió a hacer la querella.

17. Admite que no hizo gestión con el Departamento de Educación sobre el movimiento de escuela al colegio.

18. Admite que la querella se radicó el 19 de agosto, un día después del primer día de la escuela sin darle el espacio al Departamento de Educación para que resolviera esta situación. Declara que solo fue un texto a su facilitadora.

19. Al preguntársele por el Departamento si tiene alguna información sobre esa notificación, no la pudo producir en la vista, porque no lo encontró en su teléfono.

C. Re-directo

1. Aclara que la escuela que visit[ó] no era la adecuada porque no tenía asistente. Aclara que fueron dos días que llevo a su hijo a la escuela y ninguna de las dos fechas lo aceptaron, ni el 13 ni el 18 de agosto.

D. Re- contra

1. Admite que el 13 no estaban recibiendo los niños por las pruebas diagnósticas.
2. Declara que su hijo se llev[ó] para tomar la prueba diagnóstica.
3. El 18 de agosto cuando llego al salón había una asistente para 9 niños en el salón de kínder autismo.[3]

En virtud de lo dispuesto, la agencia dictaminó que, el Departamento de Educación no le proveyó al menor una ubicación adecuada a sus necesidades y sus capacidades. A pesar de lo anterior, resolvió que, la Parte Recurrente no presentó prueba durante la celebración de la vista para demostrar que la institución privada propuesta está diseñada para atender adecuadamente al menor. Particularmente, estableció que "la Propuesta de Servicios no pudo autenticarse por falta del testigo esencial para su admisión".[4] En efecto, concluyó que la Parte Recurrente no cumplió con el *quantum* de prueba para prevalecer en su reclamación. Por último, dispuso que "se les advierte a las partes que esta resolución es final, por lo que no procede la solicitud de reconsideración ante este foro administrativa".[5]

En consecuencia, declaró No Ha Lugar la querella presentada por la  parte recurrente.  Inconformes con tal proceder, el 14 de noviembre de 2025, los padres del menor A.D.C.V. recurrieron ante este foro intermedio apelativo mediante un recurso de *Revisión Judicial,* en el cual esbozaron los siguientes señalamientos de error:

PRIMER SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al resolver que no procede la compra de servicios solicitada ante la falta de una alternativa de ubicación en el mercado público.

---

[3] *Véase,* SUMAC TA, Entrada Núm. 1, Anejo 2, págs. 1-4.
[4] *Véase,* SUMAC TA, Entrada Núm. 1, Anejo 2, pág. 11.
[5] *Véase,* SUMAC TA, Entrada Núm. 1, Anejo 2, pág. 12.

SEGUNDO SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al no resolver que las alternativas de ubicación propuestas por la agencia querellada no satisfacen las necesidades particulares de la menor querellada.

TERCER SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al no resolver que la querellante no presentó prueba para demostrar que la institución privada sugerida preparó una propuesta especialmente diseñada para el menor, que redunde en su beneficio educativo.

CUARTO SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al no resolver que la querellante no proveyó datos suficientes para demostrar que la institución privada sugerida preparó una propuesta especialmente diseñada para el menor, que redunde en su beneficio educativo.

QUINTO SEÑALAMIENTO DE ERROR: Erró el foro administrativo en su apreciación de la totalidad de la prueba oral y documental presentada en la vista administrativa al obviar por completo la evidencia sobre las necesidades particulares de la menor, sobre la necesidad de la alternativa de ubicación que está proveyendo la alternativa privada propuesta y sobre el derecho a compra de servicio solicitada.

SEXTO SEÑALAMIENTO DE ERRRO: Erró el foro administrativo, abusó de su discreción y violó el debido proceso de ley al no admitir como evidencia la propuesta de la institución privada.

SÉPTIMO SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al no resolver nada en cuanto a la solicitud de que sean cubiertas las terapias necesarias para el menor.

OCTAVO SEÑALAMIENTO DE ERROR: Erró el foro administrativo recurrido al privar a la parte recurrente de su debido proceso de ley al prohibir la presentación de una solicitud de reconsideración en este tipo de casos.

En vista de ello, el 18 de noviembre de 2025, esta Curia emitió *Resolución,* mediante la cual concedió al Departamento de Educación el término de treinta (30) días para presentar la transcripción de la prueba oral. De conformidad con lo anterior, el 17 de diciembre de 2025, la agencia radicó una *Moción de Cumplimiento de Orden,* a la cual adjuntó la *Transcripción de Regrabación Suministrada.* En consecuencia, el 15 de enero de 2026, la Parte Recurrente presentó el *Alegato Suplementario.*

En igual fecha, este Tribunal de Apelaciones dictó *Resolución,* en la cual otorgó el término de treinta (30) días a la agencia recurrida para radicar su alegato en oposición. Conforme con lo decretado, el Departamento de Educación, por conducto de la Oficina del

Procurador General de Puerto Rico ("Procurador General") sometió el 17 de febrero de 2026 el *Escrito en Cumplimiento de Resolución*.

Con el beneficio de la comparecencia de las partes, procedemos a discutir la normativa jurídica pertinente a la controversia ante nuestra consideración.

## II.

### A. *Servicios del programa de Educación Especial*

En nuestra jurisdicción, "la educación goza de profundas garantías de rango constitucional". *Orraca López v. ELA*, 192 DPR 31, 40 (2014); *Declet Ríos v. Depto. de Educación*, 177 DPR 765, 773 (2009). Por su trascendencia, la Carta de Derechos de la Constitución de Puerto Rico reconoce expresamente que toda persona tiene derecho a recibir una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos y las libertades fundamentales. Artículo II, Sec. 5, Const. PR, LPRA, Tomo 1. Véase, también, *AMPR v. Srio. Educacion, E.L.A.*, 178 DPR 253, 271 (2010). El propósito de este precepto "es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente sujeto a que el Estado tenga los recursos necesarios para su implantación". *Declet Ríos v. Depto. de Educación, supra,* pág. 773; *Asoc. Academias y Col. Cristianos v. E.L.A.*, 135 DPR 150, 168-169 (1994).

Acorde con lo anterior, en nuestro ordenamiento rige tanto legislación federal como estatal que salvaguarda los derechos de los estudiantes del programa de Educación Especial.[6]  A esos efectos,

---

[6] El referido estatuto es extensivo a nuestra jurisdicción, según lee a continuación:

> *Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.* 20 USC sec. 1415(a).

el Congreso de Estados Unidos aprobó la legislación conocida como *Individuals with Disabilities Education Act,* 20 USCA sec. 1401, ("IDEA" por sus siglas en inglés), cuyo propósito garantiza que los estudiantes con diversidad funcional reciban una educación pública, apropiada y gratuita en atención a sus necesidades particulares. Véase, *Orraca López v. ELA, supra,* págs. 41-42. Al respecto, la precitada legislación federal dispone que el término **educación pública, gratuita y apropiada** ("FAPE", por sus siglas en inglés)[7] se refiere a la educación especial y los servicios relacionados que: (1) se brindan con fondos públicos, bajo supervisión y dirección públicas, y sin costo alguno; (2) cumplen con los estándares administrativos y educativos del Estado; (3) incluyen la educación preescolar, primaria o secundaria apropiada; y (4) se facilitan de conformidad con el programa de educación individualizada. 20 USC 1401 (9). De manera particularizada, el término **educación especial** se refiere a aquella instrucción especialmente diseñada, sin costo alguno, para satisfacer las necesidades únicas de un niño con discapacidad, según se detalla a continuación:

> *The term "special education" means specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including:*
>
> *(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and*
>
> *(B) instruction in physical education.* 20 USC sec. 1401(29).

En armonía con el estado de derecho federal, la Asamblea Legislativa de Puerto Rico adoptó la Ley de Servicios Educativos Integrales para Personas con Impedimentos, Ley Núm. 51-1996, según enmendada, ("Ley Núm. 51")[8], 8 LPRA sec. 1351, para

---

[7] El término en inglés es conocido como *free appropriate public education.*

[8] Al interpretar la precitada pieza legislativa, el Tribunal Supremo de Puerto Rico en *Orraca López v. ELA, supra,* pág. 41 emitió el siguiente pronunciamiento pertinente al recurso de epígrafe:

salvaguardar el derecho a la educación de los estudiantes con diversidad funcional, y permitirles así desarrollarse plenamente y convivir con dignidad en la comunidad de la que forman parte. Con ese propósito en mente, el Artículo 2 de la precitada legislación define **educación especial** como la "enseñanza pública gratuita especialmente diseñada para responder a las necesidades particulares de la persona con impedimentos[9], en el ambiente menos restrictivo". 18 LPRA sec. 1351(7). A la luz de lo anterior, el Artículo 4 de la Ley Núm. 51-1996, 18 LPRA sec. 1353, establece una serie de derechos que amparan a los estudiantes en atención a sus necesidades:

    a. Que se le garantice, de manera efectiva, iguales derechos que a las personas sin impedimentos.

    b. Ser representados ante las agencias y foros pertinentes por sus padres para defender sus derechos e intereses.

    c. Recibir protección contra negligencia, maltrato, prejuicio, abuso o descuido por parte de sus padres, de sus maestros y de la comunidad en general.

    **d. Recibir, en la ubicación menos restrictiva, una educación pública, gratuita, especial y apropiada, de acuerdo a sus necesidades individuales e idiomáticas.**

    e. Ser evaluados y diagnosticados con prontitud por un equipo multidisciplinario, que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo al programa educativo individualizado para el desarrollo óptimo de sus potencialidades.

---

En observancia del citado precepto constitucional y acorde con la legislación federal en esta materia, el propósito de la Ley Núm. 51 es garantizar educación pública, gratuita, y apropiada a los estudiantes con necesidades especiales que asistan a las escuelas públicas del País. Ello, en el ambiente menos restrictivo posible, según su plan individualizado de servicios. (Énfasis nuestro).

[9] Respecto a las personas con impedimento, el referido texto legislativo provee la siguiente definición, según dispuesto en el inciso (12):

Persona con impedimentos — infantes, niños, jóvenes y adultos hasta los 21 años de edad inclusive, a quienes se les ha diagnosticado una o varias de las siguientes condiciones: trastorno del desarrollo intelectual, problemas de audición, incluyendo sordera, problemas del habla o lenguaje, problemas de visión, incluyendo ceguera, disturbios emocionales severos, problemas ortopédicos, autismo, sordo-ciego, daño cerebral por trauma, otras condiciones de salud, problemas específicos de aprendizaje, déficit de atención o impedimentos múltiples; quienes por razón de su impedimento, requieran educación especial y servicios relacionados. Incluye también retraso en el desarrollo para los infantes desde el nacimiento hasta los 2 años, inclusive. 18 LPRA 1351 (12).

  f. Recibir los servicios integrales que respondan a sus necesidades particulares e idiomáticas y que se evalúe con frecuencia la calidad y efectividad de los mismos.

  g. Participar cuando sea apropiado en el diseño del Programa Educativo Individualizado PEI y en la toma de decisiones en los procesos de transición.

  h. Participar de experiencias en ambientes reales de trabajo, hasta donde sus condiciones lo permitan, a fin de explorar su capacidad para adiestrarse y desarrollarse en una profesión u oficio.

  i. Que se mantenga la confidencialidad de sus expedientes.

  j. Que sus padres o ellos mismos soliciten la remoción del expediente de documentos que puedan serles detrimentales, con arreglo a la reglamentación establecida.

  k. Que las decisiones que se tomen se fundamenten en el mejor interés de su persona. (Énfasis nuestro).

En aras de salvaguardar tales derechos, el Artículo 3(3) de la Ley Núm. 51-1996, *supra*, requiere el diseño de un Programa Educativo Individualizado ("PEI") que establezca: (1) las metas a largo y corto plazo del estudiante del programa de Educación Especial, (2) los servicios educativos y (3) los servicios relacionados indispensables, según lo determine el equipo multidisciplinario. 18 LPRA sec. 1352. La aludida legislación define el PEI, de la siguiente manera:

> [E]s un documento escrito para cada persona con impedimentos, especialmente diseñado para responder a sus necesidades educativas particulares, basado en las evaluaciones realizadas por un equipo multidisciplinario, y con la participación de los padres de dicha persona y, cuando sea apropiado, por la propia persona, y el cual, en la medida que sea posible, brindará a la persona acceso a actividades vocacionales y ocupacionales, incluyendo actividades agrícolas educativas que tengan el propósito de servir como laboratorios de enseñanza para la práctica laboral y el desarrollo de destrezas empresariales, entre otros. El Programa Educativo Individualizado podrá ser revisado anualmente y enmendado, tantas veces sea necesario, considerando la importancia de que éste responda a las necesidades educativas particulares y adaptado a la persona con impedimentos. 18 LPRA sec. 1351(13). (Citas omitidas).

De manera similar, la Sección 7.1 del Manual de Procedimientos de Educación Especial ("Manual de Procedimientos")[10], adoptado por el Departamento de Educación el 20 de julio de 2020, preceptúa lo siguiente respecto al PEI:

---

[10] Este documento tiene el propósito de proporcionar orientación y dirección al personal administrativo y docente sobre los procesos relacionados con el

> 1. **El Programa Educativo Individualizado (PEI) es el documento donde se establecen las necesidades académicas y funcionales del estudiante y cómo serán minimizadas a través de los servicios que el programa de educación especial ofrece con el propósito de garantizar que el estudiante reciba una educación pública, gratuita y apropiada conocida como FAPE, por sus siglas en inglés.**
>
> 2. **Es un documento que recoge los acuerdos de los servicios educativos, relacionados y suplementarios que el DEPR se compromete a ofrecerle al estudiante.**
>
> 3. **El PEI es un documento oficial que contiene servicios cobijados por legislación federal y estatal. Se revisa al menos una vez al año y se enmienda todas las veces que sea necesario**. (Énfasis nuestro).

Entre los criterios contenidos en el PEI, se encuentra la **alternativa de ubicación**, dispuesta en el apartado VIII de este documento. *Íd*. Mediante este renglón se establece "[l]a alternativa de ubicación donde el estudiante recibirá su educación y un desglose de las alternativas consideradas y descartadas. Las fechas proyectadas para el inicio de los servicios y la frecuencia, lugar y duración anticipada de los mismos". *Íd*. De conformidad con la Sección 6.1 del Manual de Procedimientos (2020), *supra*, la determinación de la alternativa de ubicación está a cargo del Comité de Programación y Evaluación ("COMPU"), según se esboza a continuación:

> Las decisiones sobre los servicios que el programa de educación especial le ofrecerá a un estudiante son determinadas por un grupo de profesionales que tienen conocimiento sobre las necesidades académicas y funcionales que presenta el estudiante y/o experiencia en cómo estas pueden minimizarse en el ambiente escolar. En Puerto Rico, este grupo de profesionales se denomina Comité de Programación y Ubicación (COMPU).

Para determinar la ubicación adecuada de un estudiante, el COMPU está orientado por una serie de consideraciones[11] recogidas en la Sección 8 del Manual de Procedimientos (2020), *supra*:

> El proceso de ubicación consta de dos procesos:

---

Programa de Educación Especial. Ahora bien, "[n]ada en este documento tiene por objeto crear, disminuir o alterar ningún derecho, recurso u obligación vigente. Siendo esto un Manual, no constituye una creación de nuevos derechos, sino una interpretación de estos". Introducción, Manual de Procedimientos, *supra*.

[11] Estas consideraciones son consistentes con los parámetros establecidos en el *Code of Federal Regulación,* 34 CFR. sec. 300.116.

a. **La determinación de la alternativa de ubicación donde se implementará el PEI - Una alternativa de ubicación es el ambiente educativo o el tipo de salón donde el estudiante recibirá su educación y donde se implementará el PEI. Esta ubicación será en una escuela pública, apropiada para el estudiante y de forma gratuita para los padres. En la legislación federal se le conoce como "Free, appropriate and public education**" (FAPE, por sus siglas en inglés). La FAPE garantiza que el estudiante se le:

   i. **ofrezca una educación especial que le permita satisfacer las necesidades particulares que presenta**.

   ii. **provea servicios relacionados que ayuden al estudiante a beneficiarse de la educación especial**.

   iii. **proporcione esos servicios de manera gratuita**.

   iv. **provea adaptaciones y acomodos razonables para ayudarlo a aprender y a participar en el programa de educación general**.

   v. **cree un PEI donde se describa los servicios de educación especial que se ofrecerán**.

   vi. **enseñe en el ambiente menos restrictivo.**

b. **La identificación de una localización donde se tiene disponible la alternativa de ubicación recomendada. La localización es la escuela pública, donde se tenga la alternativa de ubicación recomendada, que esté más cercana al lugar de residencia del estudiante**. (Énfasis nuestro).

A base de tales criterios, el Departamento de Educación garantizará que la determinación de ubicación sea alcanzada a tenor con el PEI y el principio de la alternativa menos restrictiva, según dispuesto en la Sección 300.114 del *Code of Federal Regulación*, del Título 34 de Educación:

*(2)* ***Each public agency must ensure that:***

   i. ***To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled; and***

   ii. ***(ii) Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.*** 34 CFR sec. 300.114.

Ahora bien, esta determinación no es irrestricta. Los padres o los encargados del menor tienen derecho a objetar la ubicación

dispuesta en el PEI. En tales casos, pueden radicar una querella administrativa a tenor con el formulario SAEE-23, según discutiremos más adelante. Sección 8.4(16), Manual de Procedimientos (2020), *supra*. Vale señalar que, lo anterior no implica que el Estado debe costear automáticamente la compra de servicios brindados por una institución privada propuesta por el padre o encargado del menor. Así pues, como norma general, la legislación federal no exige que el organismo administrativo estatal pague por los costos de la educación y servicios relacionados, provistos por una institución privada, si colocó a la disposición del menor una educación pública gratuita y apropiada a sus necesidades particulares. 20 USC sec. 1412(10)(C)(i). Ahora bien, si la agencia no situó a la disposición del estudiante un entorno educativo con tales componentes, entonces el Estado tiene la obligación de sufragar la compra del servicio, conforme lo establece la legislación federal:

> *Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, **at no cost to their parents**, if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State.* 20 USC sec. 1412 (a)(10)(B)(i).

Cónsono con lo anterior, la Sección 8.3(6) del Manual de Procedimientos, *supra*, prescribe que, si el Departamento de Educación no tiene la alternativa de ubicación, puede identificar una escuela privada para comprar el servicio educativo a costo público. **Al evaluar si procede el pago del servicio, la agencia estatal determinará: (1) si dichas escuelas e instituciones privadas cumplen con los estándares aplicables a las agencias educativas estatales y locales, y (2) si los niños atendidos en**

**tales instituciones gozan de todos los derechos que tendrían si fueran atendidos por la agencia.** 20 USC sec. 1412 (a)(10)(B)(ii).[12]

Sobre este particular, la jurisprudencia federal vigente instaura el siguiente análisis, consistente con nuestra política pública estatal, para evaluar si una institución educativa privada proporciona los beneficios educativos:

> ***Accordingly, "when a public school system has defaulted on its obligations under the Act, a private school placement is 'proper under the Act' <u>if the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits.</u>"*** *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,* 510 US 7, 11 (1993) (citando a *Board of Ed. of Hendrick Hudson v. Rowley*, 458 US 176, 207 (1982)).

En consonancia con lo discutido, el Tribunal Supremo de Estados Unidos ha establecido que también se debe examinar **si la escuela ofrece un Plan Educativo Individualizado (PEI) razonablemente diseñado para permitir que el niño progrese de manera apropiada según sus circunstancias, tal como se explica a continuación**:

> *While Rowley declined to articulate an overarching standard to evaluate the adequacy of the education provided under the Act,* ***the decision and the statutory language point to a general approach: To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstance.*** *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.,* 580 US 386, 399 (2017); *Board of Ed. of Hendrick Hudson v. Rowley,* supra.

En suma, procede el reembolso de estos gastos cuando se determina que la agencia no cumplió con la obligación de proveer una educación pública, apropiada, gratuita de manera oportuna, según dispuesto a continuación:

> *If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll*

---

[12] En la versión en inglés el referido estatuto lee así:

> *In all cases described in clause (i), the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencie.* 20 USC sec. 1412 (a)(10)(B)(ii).

> *the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.* 20 USC sec. 1412. (10)(C)(ii)

Por consiguiente, si la parte interesada demuestra que la institución educativa privada cumple con los estándares aquí discutidos, entonces le corresponde a la agencia sufragar el costo del servicio.

### B. Procedimiento adjudicativo ante el Departamento de Educación

En virtud de la política pública aquí discutida, el Departamento de Educación de Puerto Rico adoptó el *Reglamento del Procedimiento para la Resolución de Querellas Administrativas de Educación Especial y sobre la Otorgación de Honorarios de Abogados*, Reglamento Núm. 9168 de 26 de febrero de 2020 (Reglamento Núm. 9168). El Artículo 1 del Reglamento Núm. 9168, *supra*, preceptúa el propósito de este texto reglamentario, de la siguiente manera:

> El propósito de este reglamento es establecer los procedimientos que se implementarán en la adjudicación de las Querellas administrativas de Educación Especial referentes a las controversias relacionadas a la localización, identificación, registro, elegibilidad, evaluación, **ubicación, servicios educativos relacionados**, **de apoyo y la provisión de una educación pública, gratuita y apropiada, al amparo de las leyes y jurisprudencia federal y estatal vigente**. Artículo 1 del Reglamento Núm. 9168, *supra*. (Énfasis nuestro).

Al amparo de lo anterior, un padre, tutor o encargado de un estudiante podrá radicar una querella en contra del Departamento de Educación, en las instancias delimitadas por el Artículo 6 del Reglamento 9168, *supra*:

> **El padre, madre, tutor o encargado de un estudiante o una estudiante podrá presentar una querella contra el Departamento de Educación cuando entienda que la agencia no haya cumplido o que no esté conforme con cualquier acción, inacción o determinación referente a la localización, identificación, registro, elegibilidad, evaluación, <u>ubicación</u>, la prestación de servicios educativos, relaciones, de apoyo o la provisión de una educación pública, gratuita y apropiada.** (Énfasis nuestro).

La querella deberá presentarse ante la Oficina Regional Educativa, en la escuela pública, en el Centro de Servicios de Educación Especial, o en la Unidad Secretarial de Querellas y Remedios Provisional, según lo establece el inciso (2) del Artículo 6 del precitado reglamento. Radicada la querella, el Departamento de Educación presentará su contestación con el siguiente contenido, a saber: (1) las razones por las cuales el Departamento de Educación denegó el remedio solicitado en la querella; (2) las otras opciones que consideró el COMPU con relación a los remedios solicitados; (3) una descripción de los documentos que utilizó el Departamento de Educación para tomar su decisión; y (4) una descripción de otros factores relevantes que fueron considerados por la agencia educativa. Artículo 6(7)(b), Reglamento 9168, *supra.*

Sometida la querella, las partes tendrán el derecho a la celebración de una vista a cargo de un juez administrativo, según se establece en el Artículo 9 del cuerpo reglamentario precitado:

> La vista administrativa es un mecanismo que se utiliza para solicitud alguna controversia entre los padres y el Departamento de Educación. En el mismo, las partes presentan sus alegaciones y evidencias, y un juez administrativo toma la determinación de la acción a seguir.

Al celebrar la vista, el juez administrativo velará fielmente por el orden de los procesos, manteniendo el control de la vista administrativa, y promoviendo siempre un clima de respeto, cordialidad, y sensibilidad entre las partes, y hacia cualquier otro participante que esté presente en la vista. Art. 9(7)(a)(ii), Reglamento 9158, *supra.* En este contexto, opera la siguiente normativa en torno a las Reglas de Evidencia:

> **vii. Las Reglas de Evidencia no serán de aplicación a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.**
>
> *viii.* **El juez administrativo podrá excluir aquella prueba o evidencia impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios**

**reconocidos por los tribunales**. Art. 9(7)(a)(vii) y (viii), Reglamento 9198, *supra.*

Celebrada la vista, el juez administrativo estará en posición de dictar la determinación final. En ese sentido, el Art. 9 del Reglamento 9198, *supra*, en los incisos (7)(f)(ii), dispone lo siguiente:

> **Toda orden o resolución emitida deberá ser procedente en derecho sustantivo y procesal, razonable, reflexionada, directa, basada en la prueba presentada durante la celebración de la vista administrativa y en el expediente y estableciendo fecha cierta para su cumplimiento y de ser posible, especificar el nombre de la persona (o su representante), obligada a cumplir la orden y posición que ocupa**, a menos que sea la Resolución final, en la que solo pondrá la posición que ocupa dicha persona.

No obstante, el Artículo 8, inciso el inciso (3)(a), del aludido cuerpo reglamentario **establece que no procede la solicitud de reconsideración ante la agencia en aquellas instancias en las cuales se dicta resolución final que ordena cierre y archivo de la querella**. Ahora bien, el precitado artículo reconoce que cualquier parte perjudicada por una resolución final tiene derecho a acudir en revisión judicial al Tribunal de Apelaciones dentro del término de treinta (30) días a partir del archivo de la querella. Artículo 8(3)(c), Reglamento 9198, *supra.*

### C. *Debido proceso de ley en procedimientos administrativos*

En nuestro ordenamiento jurídico, ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7 Const. PR, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. En virtud de esta protección se procura que toda persona tenga un proceso justo con todas las debidas garantías que ofrece la ley en el ámbito judicial como en el administrativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012) (citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995)). Ahora bien, en los procedimientos de naturaleza administrativa, la garantía del debido proceso de ley no constituye una camisa de fuerza que prive a la

agencia de dirigir a sus procesos de forma justa, práctica y flexible. *Katirias's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Almonte et al. v. Brito,* 156 DPR 475, 481 (2002).

En aras de salvaguardar este derecho —en su vertiente procesal— la Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9641, según enmendada ("LPAU") provee las siguientes garantías mínimas, a saber: (1) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte, (2) **derecho a presentar evidencia**, (3) derecho a una adjudicación imparcial, y (4) derecho a que la decisión sea basada en el expediente. En lo pertinente a este recurso, es menester señalar que, el derecho a presentar prueba es parte consustancial del proceso adjudicativo. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed., San Juan, SITUM, 2023, pág. 228. Por su relevancia, este derecho constituye uno de los ejes centrales del debido proceso de ley. *Rivera et al. v. Arcos Dorados et al*, 212 DPR 193, 207 (2023); *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998).

A los fines de permitir un procedimiento flexible respecto a la presentación de la prueba a nivel administrativo, la Sección 3.01 (e) de la LPAU, *supra*, dispone lo siguiente:

> **(e) *Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.*** 3 LPRA sec. 9653. (Énfasis nuestro).

A la luz de esta normativa, se evitan las trabas procesales que ocurren en los tribunales de justicia, y a su vez, se propicia que las personas puedan participar en los procesos administrativos. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño, supra,* pág. 228; Véanse*, también, Otero v. Toyota,* 163 DPR 716, 733 (2005); *Martínez v. Tribunal Superior,* 83 DPR 717, 720 (1961).

### D. Estándar de revisión de dictámenes administrativos

Constituye norma reiterada que, los tribunales revisores apelativos estamos llamados a conceder amplia deferencia a las decisiones de las agencias administrativas. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020). Así, pues, las determinaciones provenientes de las agencias gozan de la experiencia y el conocimiento especializado sobre los asuntos ante su consideración. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020). Por consiguiente, respecto a las determinaciones de hechos, los tribunales no intervendremos en estas, siempre y cuando surja del expediente administrativo evidencia sustancial que las respalda. *The Sembler Co. v. Mun. De Carolina*, 185 DPR 800, 821-822 (2012). En ese aspecto, la evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. Planificación et al., supra*, 591.

No obstante, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Así, pues, la normativa imperante reconoce que, cuando de conclusiones de derecho se trata, tenemos una amplia facultad de revisarlas completa y absolutamente. 3 LPRA sec. 9675. Véase, también, *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012). Lo anterior, sin embargo, "no equivale a la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

Ahora bien, la deferencia a las determinaciones agenciales no es infinita. No podemos imprimir un sello de corrección a las determinaciones o las interpretaciones administrativa irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Nuestra deferencia cede cuando: **(1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales**. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754-755 (2024); *Super Asphalt v. AFI y otro, supra*, pág. 819. No obstante, la determinación de una agencia merece deferencia sustancial aun cuando su interpretación no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Voilí Voilá Corp. et al. v. Mun. Guaynabo, supra*, pág. 754*; Capó Cruz v. Jta. de Planificación et al., supra*, pág. 591.

## III.

En el recurso de epígrafe, la Parte Recurrente señala que el Foro Administrativo de Educación Especial incidió al resolver que no se presentó prueba suficiente en cuanto a la idoneidad de la institución educativa privada propuesta. En esa línea, sostiene que, la agencia no le permitió presentar la prueba documental sobre la propuesta de escuela privada, en donde el menor A.D.C.V asiste actualmente. No obstante, alega que, durante la celebración de la vista, la madre del menor declaró que las escuelas públicas visitadas no contaban con una asistente particular para atender las necesidades particulares del estudiante. En vista de ello, aduce que erró la agencia al no permitirle presentar reconsideración, por lo

que, nos solicita la revocación del dictamen impugnado. Consecuentemente, peticiona la compra de los servicios concerniente a la escuela privada propuesta.

Por su parte, el Procurador General, en representación del Departamento de Educación, arguye que la Parte Recurrente presentó únicamente el testimonio de la madre de la menor en la celebración de la vista. Razona que no demostró mediante prueba suficiente que la institución privada propuesta cumple con las exigencias establecidas en la normativa federal y estatal. Además, precisa que no se admitió como evidencia la propuesta de servicios presentada, por no haber testigos que permitieran su autenticación. Por último, argumenta que, en casos de determinaciones finales, la agencia no provee el mecanismo de reconsideración. A la luz de lo anterior, nos solicita que confirmemos el dictamen recurrido.

De entrada, nos corresponde atender el señalamiento de error (8), en cual la Parte Recurrente alega que la agencia le privó de su derecho a presentar reconsideración. En consideración a este argumento, establecemos que, la *Resolución* recurrida goza de carácter final, toda vez que contiene determinaciones de hechos y conclusiones de derecho, según exige la Sección 4.6 de la LPAU, *supra,* 3 LPRA sec. 9676. En tal contexto, el Artículo 8 del Reglamento 9198, *supra,* no contempla el derecho a solicitar reconsideración, puesto que se agotaron todos los remedios a nivel administrativo. Por ende, en esta etapa, es el Tribunal de Apelaciones quien ostenta jurisdicción para adjudicar el caso en sus méritos y conceder los remedios correspondientes. Véase, Sección 4.2 de la LPAU, *supra,* 3 LPRA sec. 9672. Así precisado, procedemos a discutir los señalamientos de error (1), (2), (3), (4), (5), (6), y (7), de manera conjunta, por estar intrínsecamente relacionados.

En primer lugar, debemos resolver si el Foro Administrativo de Educación Especial incidió al determinar que no procede la

compra de los servicios solicitados por la falta de una ubicación adecuada para el menor A.D.C.V. Respondemos en la afirmativa. Tras un análisis sosegado del recurso presente, a tenor con el derecho vigente, determinamos que la agencia recurrida erró al declarar *No Ha Lugar* la *Querella* radicada en torno a la compra de servicios. Adelantamos, a su vez, que la agencia actuó contrario al debido proceso de ley —en su vertiente procesal— al no permitirle a la Parte Recurrente someter prueba documental en respaldo a su contención. Veamos.

Surge del expediente ante nos que, el menor A.D.C.V. ha sido diagnosticado con el espectro de autismo (nivel tres), por lo que, experimenta una serie de necesidades específicas a nivel comunicativo y social.[13] De acuerdo con la evidencia documental presentada, este no mide el peligro, y no tiene control de sus esfínteres, ni de su alimentación.[14] Por tales circunstancias, el COMPU determinó que el estudiante debe estar ubicado el programa de educación temprana.[15] En atención a lo anterior, se acordó la asignación de un asistente particular para el menor,[16] y también, se determinaron los siguientes servicios dispuestos en el PEI: (1) terapia ocupacional, (2) terapia del habla, (3) terapia oromotor y (4) terapia de disfagia.[17]

Cónsono con lo anterior, durante la celebración de la vista administrativa, la señora Velázquez Villarini, madre del menor, relató que visitó la Escuela Rosa C. Benítez, institución educativa pública brindada por el Departamento de Educación, en consideración a las necesidades específicas de su hijo.[18] Sin embargo, esta señaló que dicha escuela no cuenta con asistente:

---

[13] *Véase,* Entrada 1, SUMAC TA, Anejo 3, págs. 6, 53 y 54.
[14] *Véase,* Entrada 1, SUMAC TA, Anejo 3, pág. 7.
[15] *Véase,* Entrada 1, SUMAC TA, Anejo 3, pág. 60.
[16] *Véase,* Entrada 1, SUMAC TA, Anejo 3, pág. 7.
[17] *Véase,* Entrada 1, SUMAC TA, Anejo 3, pág. 60.
[18] *Véase, Transcripción de la Prueba Oral,* líneas 2-18, pág. 18.

> *R. Pues, en la Rosa C. Benítez cuando yo voy a visitar, ese día visitando nada más, la maestra me deja en claro que solamente tiene una asistente. Yo le... ¿verdad? y yo le digo a ella, verdad, hablo con ella, tengo... tenemos esta conversación y yo le explico que, verdad, por su PEI él necesita una asistente para él solito, necesita una para él solo. Y nada, pero eso fue la primera vez que voy. Las visito, hago matrícula, hago todo, 'fine'. **El día 13 de agosto se supone que empezaran las clases. Yo llego con mi hijo. Cuando llego la maestra me dice que no lo puede recibir porque no lo van a recibir hasta el día 18. Y yo, okey. Ahí le pregunto, "¿Mira, ya nombraron a la asistente? Me dice, "Al momento no, y tenemos nueve niños en el salón y necesitan nueve asistentes y solamente tengo una". Perfecto. Pues el día 18 voy de nuevo y efectivamente no hay una T1 para mi niño todavía nombrada y que solamente tiene una asistente para nueve niños.**[19]** (Énfasis nuestro).

De hecho, la prueba oral presentada nos devela que, al día de la celebración de la vista administrativa, entiéndase, el 18 de septiembre de 2025, el Departamento de Educación aún no había asignado tal asistente a la referida escuela:

> LCDA. ECHEVARRÍA:
>
> La querella se realizó el 19 de agosto, ¿19 de agosto? Sí.
>
> LCDA. RIVERA: O sea, el día después.
>
> TESTIGO: Sí.
>
> LCDA. ECHEVARRÍA: Día después. Sí.
>
> LCDA. RIVERA
>
> **P O sea, ¿que no le dieron el espacio al Departamento de Educación para que resolviera esta situación?**
>
> **P Al día de hoy tan siquiera todavía no la tiene.**[20] (Énfasis nuestro).

En vista de esa situación, la madre del menor testificó que matriculó al estudiante en una institución educativa privada que, atiende de manera individualizada sus necesidades, según se esboza a continuación:

> R. Pues mira, pues noso... verdad, como madre responsable, que sé que mi hijo necesita, verdad, pues, mi hijo necesita mucha ayuda, verdad, porque es un niño especial, pues mamá consiguió, no, mamá buscó un colegio, mamá le está... donde le están dando todo, **tiene su T1, tiene sus terapias, tiene absolutamente todo disponible** en ese colegio, verdad, que es EPIC Learning Center. Pues eso es lo que he hecho. Mamá se movió, mamá buscó.
>
> P Okey. Al momento usted ha testificado que [A.D.C.V.] está recibiendo...
>
> R Sí.

---

[19] *Véase, Transcripción de la Prueba Oral*, líneas 3-21, pág. 19.

[20] *Véase, Transcripción de la Prueba Oral*, líneas 11-24, pág. 27.

P Sí. ...los servicios en EPIC Learning Center.

R Correcto. Todo. Absolutamente todo.

P Bien. ¿Cómo describe la educación que está recibiendo [A.D.C.V.] en EPIC?

**R Excelente. De verdad que sí. Muy buena, se ve el cambio. De verdad, aunque no lo crean en este poquito tiempo se ve el cambio. Recibí un video casi ahora mismo y el nene está más, más, más, mi nene nada que ver. O sea, nada, él no hablaba y nada más escuchar él decirle "mama" se hace un propósito, para mí eso es espectacular**. (Énfasis nuestro).[21]

Por tal motivo, la testigo solicitó el pago del servicio por parte del Departamento de Educación:

P ¿Qué usted le solicita al Honorable Foro en este día, doña Sandra?

R Pues mira, **yo lo que solicito es comprar el servicio, verdad, para que mi niño, verdad, pueda seguir recibiendo todo lo que necesita, según, verdad, está establecido en su PEI**. (Énfasis nuestro).[22]

Sin embargo, como adelantamos, cuando la Parte Recurrente intentó presentar prueba documental relativa a la propuesta de servicios, el Foro Administrativo de Educación Especial impidió su admisión. Razonó que debía comparecer un testigo para autenticar el documento referido, según surge a continuación:

SRA. JUEZA:

Le pregunto, ¿con quién usted va a autenticar la propuesta de EPIC?

LCDA. ECHEVARRÍA:

Bueno, no tenemos, verdad, un representante de la escuela, **pero sí la mamá puede, verdad, establecer que a ella se le fue entregada esa propuesta, su solicitud, para empezar el proceso**.

SRA. JUEZA:

Pero entonces, no le... yo, le adelanto, licenciada, con ella yo no la puedo admitir en evidencia, con ella sola. Ella no la preparó. (Énfasis nuestro).[23]

En aras de brindar una solución justa, razonable y consistente con el derecho aplicable, colegimos que la agencia recurrida vulneró el debido proceso de ley que le asiste a la Parte Recurrente, al negarle la oportunidad de presentar prueba documental durante la celebración de la vista administrativa.

---

[21] *Véase, Transcripción de la Prueba Oral*, líneas 4-24, pág. 20.

[22] *Véase, Transcripción de la Prueba Oral*, línea 25, pág. 19; líneas 1-5 pág. 20.

[23] *Véase, Transcripción de la Prueba Oral*, líneas 3-15, pág. 6.

Recordemos, pues, que, la Sección 3.1 de la LPAU, *supra*, establece que las partes tendrán derecho a someter prueba en procesos adjudicativos ante las agencias. Cabe señalar que, esta normativa opera en armonía con el principio general que dispone que las Reglas de Evidencia no aplican a los foros administrativos. De tal manera, se pretende brindar flexibilidad a los procedimientos administrativos para garantizar una solución justa, rápida y económica a las partes Véanse, *Otero v. Toyota, supra,* pág. 733; *Martínez v. Tribunal Superior, supra,* pág. 720. Sin embargo, la agencia recurrida obvió tales principios al asumir un ejercicio inflexible de sus facultades y privar a la Parte Recurrente de su derecho a presentar prueba documental en respaldo a reclamación, eje central del debido proceso de ley.

No obstante, además de impedir la admisión de la referida prueba, el Foro Administrativo de Educación Especial concluyó equivocadamente que, la Parte Recurrente, no cumplió con la carga probatoria para prevalecer en su reclamación. No le asiste la razón. Como indicamos previamente, la madre del menor declaró durante la vista administrativa que, la escuela pública asignada constituye una ubicación inadecuada para su hijo, pues no le provee los servicios especializados en atención a sus necesidades. **Este hecho incluso quedó constatado por la propia agencia cuando determinó que: "[d]e la prueba desfilada surge que el Departamento de Educación no cumplió con su deber de proveer la ubicación adecuada para el menor querellante en este año académico 2025-26".[24] (Énfasis nuestro). Lo anterior nos devela que, en efecto, la agencia recurrida privó al menor de su derecho a recibir una educación gratuita, pública y apropiada, de conformidad con las exigencias contenidas en la ley IDEA y en**

---

[24] *Véase,* Entrada 1, SUMAC TA, Anejo 2, pág. 11.

**contravención a la Sección 5 del Artículo II de la Constitución de Puerto Rico,** *supra.* Ante tales circunstancias, estamos llamados a ejercer nuestra facultad revisora para proveer una solución que salvaguarde el derecho fundamental a la educación que ampara al menor A.D.C.V.[25]

En esa dirección, en segundo lugar, nos corresponde evaluar si la escuela privada sugerida por la Parte Recurrente cumple los estándares instaurados por la política pública federal y estatal concernientes a una ubicación adecuada. Respondemos en la afirmativa. Luego de un examen detenido de la totalidad de la prueba documental presentada por la Parte Recurrente, establecemos que Epic Learning Center exhibe cabalmente el criterio de una ubicación adecuada. A tales efectos, contemplamos que la propuesta brindada por la referida escuela privada indica de manera precisa cómo se atenderán las necesidades particulares del estudiante, el diseño del ambiente escolar, las estrategias y metodologías educativas, así como el costo de los servicios.[26]

Al respecto, conviene detallar la siguiente información contenida en el documento aludido:

> **EPIC Learning Center es una institución educativa privada especializada en la atención de estudiantes con diversidad funcional, incluyendo el Trastorno del Espectro Autista (TEA) y otros diagnósticos del desarrollo neurológico y conductual. Nuestro compromiso es brindar un entorno Excepcional, Psicoeducativo, Inclusivo y Creativo (E.P.I.C.), donde cada alumno pueda alcanzar su máximo potencial desde una mirada profundamente humana, estructurada y empática.**
> **Adaptamos nuestras metodologías para atender las necesidades individuales de nuestros estudiantes, respetando sus ritmos de aprendizaje, promoviendo sus fortalezas, y ofreciendo apoyos individualizados que permitan su inclusión real y su bienestar emocional.**

---

[25] Es menester puntualizar que, "[c]omo derecho fundamental, la educación se constituye desde una perspectiva distinta: no es una dádiva o caridad del Estado, sino una obligación hacia sus ciudadanos". C.E. Freytes González y G. Candal Segurola, *El derecho constitucional a la Educación Especial*, 2025, pág. 49.

[26] Puntualizamos que, en la Entrada 1, SUMAC, TA, Anejo 3, pág. 63, consta el presupuesto solicitado para la compra de servicios, según se esboza a continuación:
> $5,000.00 = Mensuales para el año académico y año escolar extendido: 2025-2026
> $2,500.00 = Por concepto de matrícula (una vez al año): 2025-2026.

> **Nuestro modelo educativo se sostiene en estrategias activas, innovadoras y colaborativas, integrando lo académico, emocional y social como dimensiones esenciales del desarrollo integral.**
>
> **La creatividad, el juego, la estructura y la atención psicoemocional son elementos clave en nuestras experiencias educativas. La convivencia en EPIC se basa en valores como el respeto, la empatía, la solidaridad y la alegría, fomentando el sentido de pertenencia y evitando cualquier tipo de marginación o exclusión.**
>
> **En este contexto, [A.D.C.V.], un niño con diagnóstico de Trastorno del Espectro Autista Nivel 3, dificultades en la comunicación e integración social, y necesidades de apoyo en áreas motoras, sensoriales y de autocuidado, ha sido referido a nuestro centro como candidato a una ubicación altamente estructurada que responda a sus múltiples necesidades emocionales, académicas, sensoriales y sociales. Su perfil refleja la complejidad y la urgencia de continuar fortaleciendo entornos educativos sensibles, flexibles y técnicamente preparados para brindar las atenciones especializadas que requieren nuestros estudiantes más vulnerables.**
> **EPIC Learning Center opera en cumplimiento con la Ley de Educación Especial de Puerto Rico, así como con la Ley IDEA (*Individuals with Disabilities Education Act*), la Ley Núm. 163-2018 para el Bienestar, Integración y Desarrollo de las Personas con Autismo, y la Ley Núm. 57-2023, la cual refuerza la protección, intervención y seguridad de los menores en todos los espacios educativos y sociales. Estas leyes sustentan nuestra labor en favor de una educación accesible, segura y centrada en las necesidades reales de la población estudiantil con diversidad funcional.**[27] (Énfasis nuestro).

Igualmente, la propuesta especifica los servicios individualizados que la institución educativa privada le proveerá al estudiante:

> **El estudiante [A.D.C.V.] se beneficiará de un programa educativo altamente especializado, individualizado y adaptado a sus fortalezas y necesidades funcionales. Su integración será en un grupo pequeño a nivel preescolar especial, en modalidad presencial, con horario de 8:00 a.m. a 2:00 p.m., en un entorno estructurado, seguro y libre de estímulos que interfieran con su procesamiento sensorial y condición de disfagia.**
> **El programa incluirá:**
>
> **• Clases medulares adaptadas, con énfasis en la comunicación funcional, habilidades cognitivas básicas y desarrollo motor.**
>
> **• Destrezas de vida independiente, diseñadas para promover la autonomía, el autocuidado, la seguridad física y la funcionalidad diaria.**
>
> **• Apoyo continuo de asistente de servicios (T1) asignada exclusivamente para él durante toda la jornada académica.**
>
> **• Talleres psicoeducativos, orientados al fortalecimiento de la autorregulación, la interacción social y el manejo de emociones.**

---

[27] *Véase*, Entrada 1, SUMAC TA, Anejo 3, pág. 65.

**• Actividades inclusivas y experienciales que fomentan la socialización y el sentido de pertenencia en un ambiente respetuoso y empático.**

**Cada componente del programa está estructurado sobre estrategias con base científica, incluyendo:**

**• Metodología TEACCH, que organiza el entorno de aprendizaje para favorecer la comprensión y la independencia del estudiante.**

**• Sistema de Comunicación por Intercambio de Imágenes (PECS), para mejorar la comunicación funcional y la expresión de necesidades.**

**• Aprendizaje estructurado y secuencial.**

**• Análisis funcional de conducta.**

**• Uso de apoyos visuales y metodologías multisensoriales que estimulan el desarrollo integral. El Programa EPIC ha sido diseñado para que pueda desarrollar su potencial en un ambiente que respete su individualidad, fortalezca su autoestima y le brinde las herramientas necesarias para avanzar en su trayectoria educativa y emocional.**

**El Programa EPIC ha sido diseñado para que [A.D.C.V.] pueda desarrollar su potencial en un ambiente que respete su individualidad, fortalezca su autoestima y le brinde las herramientas necesarias para avanzar en su trayectoria educativa y emocional.** (Énfasis nuestro).[28]

Conforme a la totalidad de la prueba sometida, reiteramos que la Parte Recurrente cumplió con la carga probatoria para prevalecer en su reclamación. Así, pues, demostró, en primer lugar, que: (1) la agencia no le proveyó al menor una ubicación adecuada a tenor a las consideraciones recogidas en el PEI. Consecuentemente, evidenció que: (2) la institución educativa privada sugerida cumple con los estándares educativos federales y estatales requeridos, por lo que, (3) el estudiante gozará de los derechos que se supone que tendría si fueran brindados por el Departamento de Educación, según acordados en el PEI. Véanse, 20 USC sec. 1412 (a)(10)(B)(ii); *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter, supra,* pág. 11; *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist., supra,* pág. 399; *Board of Ed. of Hendrick Hudson v. Rowley,* supra, pág. 207. En vista de ello, determinamos que Epic Learning Center exhibe las condiciones requeridas para garantizar una ubicación adecuada del estudiante, en un ambiente no restrictivo, atemperado

---

[28] *Véase,* Entrada 1, SUMAC TA, Anejo 3, págs. 74-75.

a sus necesidades e intereses particulares, en un término oportuno. Por consiguiente, procede conceder la compra de servicios según solicitados por la Parte Recurrente, de conformidad a la propuesta presentada.[29]

A la luz de lo anterior, concluimos que, el dictamen recurrido no es merecedor de nuestra deferencia judicial, toda vez que no descansa la totalidad de la prueba sometida en el expediente, y se distancia de los parámetros legales que dimanan del debido proceso de ley. A su vez, la determinación aquí impugnada contraviene con la política pública federal y estatal que salvaguarda el derecho fundamental a la educación que asiste al menor A.D.C.V. En virtud de ello, revocamos la *Resolución* dictada por el Foro Administrativo de Educación Especial.

**IV.**

Por los fundamentos que anteceden, revocamos la *Resolución* dictada el 17 de octubre de 2025 por el Foro Administrativo de Educación Especial del Departamento de Educación. En consecuencia, procede conceder la compra de servicios según solicitados por la Parte Recurrente, de conformidad con la propuesta presentada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[29] *Véase*, Entrada 1, SUMAC TA, Anejo 3, págs. 62-89.